# Illinois Official Reports

## Appellate Court

---

### *In re S.B.*, 2015 IL App (4th) 150260

---

| | |
|---|---|
| Appellate Court Caption | In re: S.B., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. TARA A. BULLOCK, Respondent-Appellant.–THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. TARA A. BULLOCK, Respondent-Appellant.–In re: I.B., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. TARA A. BULLOCK, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-15-0260, 4-15-0261, 4-15-0262 cons. |
| Filed | August 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Adams County, Nos. 14-JA-04, 14-JA-05, 14-JA-06; the Hon. John C. Wooleyhan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Betsy Bier, of Bier & Bier Law Office, of Quincy, for appellant.<br><br>Jonathan H. Barnard, State's Attorney, of Quincy (Patrick Delfino, David J. Robinson, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Harris and Holder White concurred in the judgment and opinion.


**OPINION**

¶ 1    Respondent, Tara A. Bullock, is the mother of three children: S.B., born December 15, 2008; E.B., born November 16, 2009; and I.B., born November 23, 2010. In these consolidated appeals, respondent challenges adjudicatory orders in which the trial court found the children to be neglected and dispositional orders in which the court made them wards of the court. Her only argument is that the court violated her right to due process by proceeding with the adjudicatory and dispositional hearings in her absence instead of awaiting her arrival from prison.

¶ 2    The denial of a continuance, even if erroneous, presents no question of due process. But the denial of a continuance, in the circumstances of this case, was indeed erroneous, an abuse of discretion. Therefore, we reverse the trial court's judgment in Adams County case Nos. 14-JA-04, 14-JA-05, and 14-JA-06, and we remand those cases for a new adjudicatory hearing.


¶ 3                                I. BACKGROUND
¶ 4                    A. The State's Petitions to Adjudicate the Children
                        to Be Neglected Minors and to Make Them Wards of the Court
¶ 5    On March 10, 2014, the State filed petitions to adjudicate the children to be neglected minors and to make them wards of the court. Each of the petitions included the following allegation:

    "e. On March 6, 2014, Mother was arrested for methamphetamine possession and production. Mother admitted to [the child protection investigator] that she and Father had used methamphetamine on March 6, 2014[,] at 4:00 A.M. Mother admitted to assuming parental responsibility of her children again at 7:30 A.M. Father ran from the home and has not yet been arrested. Mother further admitted to using and [*sic*] methamphetamine since September of 2013 and admitted that she has purchased products for the production of methamphetamine, including pseudoephedrine pills."

¶ 6    The petitions also alleged that the father, Joseph Bullock, had been arrested for domestic battery. He had "punched [respondent] in the face and hit her in the head with a stick," according to the petitions.


¶ 7                                B. The Adjudicatory Hearing
¶ 8    On January 22, 2015, the trial court issued to the warden of Logan Correctional Center a writ of *habeas corpus ad prosequendum*, requiring the warden to bring respondent to the Adams County courthouse on February 26, 2015, at 9 a.m. An adjudicatory hearing was scheduled for that time.

¶ 9        There was heavy snowfall the evening of February 25, 2015, through the early morning of February 26, 2015, and the roads between Lincoln and Quincy were covered with snow. The transport vehicle left Logan Correctional Center at 6:35 a.m. on February 26, 2015.

¶ 10       At 9 a.m. on February 26, 2015, the cases were called for an adjudicatory hearing and a dispositional hearing. The father, Joseph Bullock, appeared, along with his attorney, Holly J. Henze. E. John Clark appeared on behalf of the minors. Respondent did not personally appear, but her attorney, Betsy Bier, appeared.

¶ 11       When it was apparent that the Illinois Department of Corrections was significantly late, the assistant State's Attorney, Joshua Jones, telephoned Logan Correctional Center to obtain an estimated time of arrival. The staff there was unable to provide any information about the location of the transport vehicle or the expected time of arrival.

¶ 12       At 9:35 a.m., the vehicle from Logan County Correctional Center still had not arrived, and the trial court called the cases for hearing. At the beginning of the adjudicatory hearing, Jones told the court it was his understanding that the father would admit the allegations of the petition. Henze confirmed that the father intended to do so. The court then asked Bier if she would be presenting any evidence. She responded:

"M[S]. BIER: Your Honor, I would make an objection to proceeding in that fashion. My client is now in the Department of Corrections. Our information is that the Department is transporting her pursuant to a writ. They left at 6:30 this morning, and I don't know what our snowfall was last night, but it was several, and I don't know what the conditions of the roads are, so I'm assuming that's why they might be late. But as far as anything regarding my client, I would object to proceeding in that fashion until she arrives.

THE COURT: Any position on that, Mr. Jones?

MR. JONES: We would ask to proceed, Your Honor.

THE COURT: The record shows that this cause has been set for some length of time for today's hearing. The petition was first filed March 2014, a year ago, so it probably would be in the best interests of the minors to proceed today if we can."

So, the court continued on with the adjudicatory hearing, admonishing the father on his proposed admission of the petitions–an admission the court ultimately accepted.

¶ 13       In the adjudicatory orders, which the trial court entered in the three cases on February 26, 2015, the court found the children to be neglected. The stated reasons for this finding were as follows: "Father admits the petition. Mother has pled guilty in 14CF153 to basis for ¶ (e) of petition." (On June 16, 2015, we allowed the State's motion to supplement the record with the amended information, the plea order, and the sentencing order in People v. Bullock, No. 14-CF-153 (Cir. Ct. Adams Co.). These documents show that on December 18, 2014, respondent entered a negotiated plea of guilty to unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2014)), and the court sentenced her to imprisonment for three years.)

¶ 14       Immediately after the adjudicatory hearing, the trial court proceeded to a dispositional hearing. The court asked Bier if she had received a copy of the dispositional report by the Illinois Department of Children and Family Services (DCFS). She answered:

"MS. BIER: I have received that, Your Honor.

For the record, I do object to proceeding to dispositional without the presence of my client and in light of the–the proceedings today.

THE COURT: For the reasons previously stated, and under the provisions of the Juvenile Court Act, it does appear it would be in the best interests of the minors to proceed today with the dispositional hearing."

¶ 15    The dispositional report stated:

"Tara is currently lodged in the Department of Corrections in the Logan Correctional Center. Tara was admitted into Logan Correctional Center on January 8, 2015. Her projected parole date is June 20, 2015. She was sentenced to three years in the Department of Corrections for Class III felony of Possession of Meth < 5 Grams in Case # 14CF153."

The trial court asked Bier:

"THE COURT: ***

And, Miss Bier, the report talks about criminal charges that the mother was facing and has now been sentenced to the Department of Corrections. Is that right?

MS. BIER: That's correct, Your Honor.

THE COURT: And do you know what the length of her sentence was?

MS. BIER: I do. It was three years, but her anticipated discharge date at this time is June 20th of this year."

¶ 16    None of the parties had any additional evidence, beyond the dispositional report. The trial court entered a dispositional order making the children wards of the court and awarding guardianship and custody of them to the guardianship administrator of DCFS.

¶ 17    The trial court recessed, and the parties and counsel left the courtroom.

¶ 18    A few minutes later, at approximately 9:36 a.m., the officers from Logan County Correctional center entered the courthouse, with respondent in their custody. They entered the courtroom at approximately 9:50 a.m. But the other parties and their attorneys had already left.

¶ 19                                II. ANALYSIS

¶ 20    Respondent's counsel effectively moved for a continuance when she objected to going forward with the adjudicatory and dispositional hearings before respondent arrived. The trial court refused to await respondent's arrival, effectively denying the motion for a continuance. Respondent argues that by going forward with the hearings in her absence, the court violated her constitutional right to due process. See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. In support of that argument, she cites, among other authorities, *In re M.R.*, 316 Ill. App. 3d 399 (2000), and *In re C.J.*, 272 Ill. App. 3d 461 (1995), in which the appellate court weighed the three factors in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), against each other to decide whether the denial of a continuance violated the parent's right to procedural due process in a proceeding to terminate parental rights (*M.R.*, 316 Ill. App. 3d at 402-03; *C.J.*, 272 Ill. App. 3d at 465-66).

¶ 21    The due-process analysis in *M.R.* and *C.J.* is misplaced because the supreme court has held, without qualification: "The sole question relating to the denial of [a] motion for a continuance is whether or not the trial court erred in its exercise of judicial discretion. Due

process is in no wise involved." *Benton v. Marr*, 364 Ill. 628, 630 (1936). A long line of cases has held that the denial of a motion for a continuance presents no due-process issue. See *Peoples Gas Light & Coke Co. v. Buckles*, 24 Ill. 2d 520, 530 (1962); *Chicago Land Clearance Comm'n v. Darrow*, 12 Ill. 2d 365, 369 (1957); *Benton*, 364 Ill. at 630; *McDermott v. Metropolitan Sanitary District*, 240 Ill. App. 3d 1, 40 (1992); *Mireles v. Indiana Harbor Belt R.R. Corp.*, 154 Ill. App. 3d 547, 553 (1987); *Meyerson v. Software Club of America, Inc.*, 142 Ill. App. 3d 87, 92 (1986); *Grant, Schon, Wise & Grant, P.C. v. R.W. Borrowdale Co.*, 114 Ill. App. 3d 89, 93 (1983); *City of Chicago v. Southgate Corp.*, 86 Ill. App. 3d 56, 58 (1980); *Moore v. McDaniel*, 48 Ill. App. 3d 152, 164 (1977). It is true that all those cases involved an interest in property whereas the present case involves a liberty interest: respondent's "liberty interest *** in the care, custody, and control of [her] children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Nevertheless, the due-process clauses of the federal and Illinois constitutions apply just as much to deprivations of property as to deprivations of liberty. "No person shall be deprived of life, liberty or property without due process of law ***." Ill. Const. 1970, art. I, § 2. "[N]or shall any State deprive any person of life, liberty, or property, without due process of law ***." U.S. Const., amend. XIV. If, in a case contemplating the deprivation of property, the denial of a continuance presents no due-process issue, the same must be true in a case contemplating the deprivation of liberty, since the due-process clauses, by their terms, protect the right to property as much as the right to liberty, without discriminating between the two rights.

¶ 22   In deciding this constitutional issue, we are mindful of the supreme court's exhortation to decide a case on nonconstitutional grounds whenever possible. *In re E.H.*, 224 Ill. 2d 172, 178 (2006). Because the constitutional argument, however, is the only argument respondent makes in her brief, we feel obliged to address it.

¶ 23   Although the constitutional argument is unconvincing, given the many cases holding that the denial of a continuance in no way implicates due process, we conclude it was unjust, and therefore an abuse of discretion, to deny a continuance in the circumstances of this case. We realize respondent does not argue abuse of discretion in her brief. Even so, forfeiture "is a limitation on the parties and not on this court[,] and we may address an issue to carry out our responsibility to reach a just result." *Village of Posen, Illinois v. Illinois Fraternal Order of Police Labor Council*, 2014 IL App (1st) 133329, ¶ 52. Here is why our sense of injustice is aroused. Respondent's right to the custody and care of her children was at stake. The trial court was informed she was en route to the courthouse. Correctional officers were driving her there. The trip merely was taking longer than usual because of heavy snowfall. Respondent had no control over the weather. Nor did she have any control over the time schedule of the Illinois Department of Corrections. Refusing to grant a continuance to await her apparently imminent arrival was unreasonable.

¶ 24   Granted, under Illinois Supreme Court Rule 231(a) (eff. Jan. 1, 1970), a motion for a continuance because of the absence of a material witness has to be supported by an affidavit stating, among other things, "of what particular fact or facts the evidence consists." See also *Mikarovski v. Wesson*, 142 Ill. App. 3d 193, 196 (1986) ("Under the circumstances of this case, where the trial court was not apprised of the nature of the proposed testimony, we conclude that the trial court did not abuse its discretion in denying the motion for continuance."). Respondent's attorney submitted no such affidavit. The appellate court, however, has been willing to dispense with an affidavit in some cases. See *Jack v. Pugeda*,

184 Ill. App. 3d 66, 76 (1989); *Rutzen v. Pertile*, 172 Ill. App. 3d 968, 974 (1988). Regardless of the materiality of the expected testimony, which an affidavit would show, a trial court can grant a continuance if one is "necessary" "for the furtherance of justice." Ill. S. Ct. R. 231(b) (eff. Jan. 1, 1970). "While broad discretion is conferred upon the trial court, that discretion must be exercised judiciously, not arbitrarily or capriciously, and a court should not refuse a continuance when the ends of justice clearly require it." *Nixon v. Harris*, 31 Ill. App. 3d 204, 209 (1975). The ends of justice clearly required a continuance in this case.

¶ 25                                III. CONCLUSION

¶ 26     For the foregoing reasons, we reverse the trial court's judgment in the three cases, and we remand them for a new adjudicatory hearing.

¶ 27     Reversed and remanded.