GWENDOLYN BUCKNER, Plaintiff-Appellee, v. WAYNE CAUSEY, Defendant-Appellee (Warrior Insurance Group, a/k/a Gallant Insurance Company, Garnishee-Appellant).

First District (4th Division)   No. 1—99—0312

Opinion filed December 30, 1999.

Bernard W. Moltz & Associates, of Chicago (Bernard W. Moltz, of counsel), for appellant.

Joseph, Lichtenstein & Levinson, of Chicago (Burton Joseph, Kenneth Levinson, and Jack Joseph, of counsel), for appellee Gwendolyn Buckner.

Birg & Associates, Ltd., of Lincolnwood (David B. Nemeroff, of counsel), for appellee Wayne Causey.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Upon the trial of her personal injury action, the plaintiff, Gwendolyn Buckner, obtained a judgment in the sum of $15,660.95 against the defendant, Wayne Causey. The plaintiff then commenced a garnishment proceeding against Causey's insurer, Warrior Insurance Group, also known as Gallant Insurance Company, and formerly doing business as Allied American Insurance Company (hereinafter referred to as Gallant/Warrior). In response to the garnishment summons, Gallant/Warrior: (1) answered, claiming that it was not in possession of funds belonging to Causey; and (2) filed a supplemental response, admitting that Causey was its insured but alleging that his failure to cooperate in the defense of the plaintiff's action was a breach of its liability insurance policy that relieved Gallant/Warrior of any obligation to satisfy the judgment against Causey.

The issue of Gallant/Warrior's liability under its policy was tried, resulting in the entry of a judgment against Gallant/Warrior in the sum of $16,771.91 in favor of Causey for the use and benefit of the plaintiff. The judgment, which was entered on May 7, 1998, included the principal balance of the plaintiff's judgment against Causey, plus accrued interest and costs. Gallant/Warrior filed a timely postjudgment motion entitled "Petition for Motion Notwithstanding the Verdict," requesting that the court vacate its judgment of May 7, 1998, and enter judgment in its favor.

While Gallant/Warrior's postjudgment motion was pending, Causey filed a petition pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1996)), seeking sanctions and an award of attorney fees and costs against Gallant/Warrior for its vexatious and unreasonable refusal to pay the judgment entered against him. On December 8, 1998, the trial court denied Gallant/Warrior's postjudgment motion and, on Causey's petition, entered an order requiring Gallant/Warrior to pay $6,727.50 for attorney fees incurred by Causey

in the garnishment proceeding and the additional sum of $3,500 as a sanction.

Gallant/Warrior now appeals from the trial court's orders of May 7, 1998, and December 8, 1998, contending that the trial court: (1) "abused its discretion" in requiring it to indemnify Causey for the plaintiff's underlying judgment; and (2) erred in awarding Causey relief under section 155 of the Illinois Insurance Code.

■ Before addressing Gallant/Warrior's arguments in support of its assignments of error, we will dispose of the plaintiff's request that we exercise our discretion and strike Gallant/Warrior's brief for failure to comply with the applicable supreme court rules. There is little question that the plaintiff's objections to Gallant/Warrior's brief, even as supplemented, are well taken. The statement of facts is argumentative, in violation of Rule 341(e)(6) (177 Ill. 2d R. 341(e)(6)), and is in some places incoherent. Further, the brief lacks a concise statement of the standard of review applicable to each issue raised as required by Rule 341(e)(3) (177 Ill. 2d R. 341(e)(3)). As originally filed, the brief was missing a page and had an incomplete appendix. Although we permitted Gallant/Warrior to supply the missing page of its brief and provide us with a complete appendix, it made no effort to correct its statement of facts or set forth standards of review. However, in the interests of judicial economy and in an effort to dispose of this appeal without further expense to the parties, we decline to strike the brief. The brief sets forth Gallant/Warrior's assignments of error, both the plaintiff and Causey have been able to respond to the issues raised, and the facts necessary to an understanding of the issues are readily ascertainable from the relatively short record. We caution, however, that our decision not to strike Gallant/Warrior's brief should not be interpreted as a signal that we are willing, as a matter of course, to overlook violations of the supreme court rules in briefs filed with this court. We are not. Simply put, we find no useful purpose would be served in this case by striking Gallant/Warrior's brief.

■ We will first address Gallant/Warrior's contention that the trial court erred in finding that it was required to indemnify Causey for the plaintiff's underlying judgment. In its brief, Gallant/Warrior claims that the trial court abused its discretion. However, discretion has nothing to do with the issue. When a garnishee's answer is contested, a trial of the issues presented is to be conducted as in all other civil cases (735 ILCS 5/12—711 (West 1996)). That is exactly what occurred below. Consequently, the question before us is not whether the trial court abused its discretion but whether its judgment is against the manifest weight of the evidence. *First Baptist Church v. Toll Highway Authority*, 301 Ill. App. 3d 533, 542, 703 N.E.2d 978 (1998).

"A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 215, 647 N.E.2d 273 (1995). For the reasons that follow, we are unable to say that the judgment entered in this case on May 7, 1998, against Gallant/Warrior and in favor of Causey for the use and benefit of the plaintiff is against the manifest weight of the evidence.

■ Gallant/Warrior does not dispute that Causey was its insured at the time he was involved in the motor vehicle accident that gave rise to the underlying litigation and the judgment entered against him. Further, there is no dispute as to the provisions of Gallant/Warrior's policy relating to the insured's obligation to cooperate in the defense of any action subject to coverage. Causey was required to cooperate and, at Gallant/Warrior's request, attend hearings and trials. The parties also stipulated that Causey did not appear or testify at the trial of the plaintiff's claim.

On February 26, 1998, the trial court heard the testimony of Causey; Grant Blumenthal, the attorney who represented Causey at the trial of the plaintiff's action; Edward Lowery, Blumenthal's supervisor; and Jeff Christofinelli, a claims adjuster employed by Gallant/Warrior. When the hearing concluded, the trial court took the matter under advisement. On May 7, 1998, the trial court issued its written order, finding that Gallant/Warrior failed to establish a defense of noncooperation. Our examination of the record reveals more than sufficient evidence to support such a finding.

Although the trial date for the plaintiff's action, October 20, 1997, was set by an order dated August 7, 1997, Causey was first notified of the trial date when he received a phone call from Blumenthal on either October 17 or 18, 1997. Blumenthal was first assigned to the case on October 17, 1997. According to Blumenthal, he spoke to Causey by phone again on October 19, 1997, and advised him to be on standby for trial the following day, Monday, October 20. Blumenthal testified that he called Causey on October 20, 1997, and told him to be in court on October 21. Prior to October 17, 1997, Causey was not notified either in writing or by phone that the trial of the plaintiff's action had been set for October 20, 1997.

Causey testified that he informed Blumenthal that he did not have sufficient funds to get to court. According to Causey, he told Blumenthal, when Blumenthal first called, that he only had $3, and when Blumenthal called for the second time, Causey told him that he had no funds. Blumenthal, however, denied that Causey told him that he had insufficient funds to come to court. Blumenthal testified that, each time he spoke to Causey, Causey said that he would appear.

The trial court found that Causey told Blumenthal that he had no money to come to court. As the trier of fact, the trial judge was in a superior position to judge the credibility of the witnesses and determine the weight to be given to their testimony. *Bazydlo*, 164 Ill. 2d at 214-15. When, as in this case, contradictory testimony that could support conflicting conclusions is given at a bench trial, we will not disturb the trial court's factual findings based on that testimony unless a contrary finding is clearly apparent. *DeLong v. Cabinet Wholesalers, Inc.*, 196 Ill. App. 3d 974, 979, 554 N.E.2d 574 (1990).

In *Anderson v. Lawlor*, 27 Ill. App. 3d 150, 153, 326 N.E.2d 529 (1975), we held:

"In asserting the affirmative defense of noncooperation, the burden is on the insurer to prove that it acted in good faith to secure the attendance of the insured and that the insured's failure to appear was due to his refusal to cooperate. [Citation.] An insurer is not liable for a judgment rendered against its insured if the insured willfully failed to cooperate by refusing to appear at trial after receiving adequate notice. [Citations.] However, the insurer is liable if it was not sufficiently diligent in attempting to secure the insured's appearance [citations] or if the insured's failure to attend was not due to a refusal to cooperate. [Citation.]"

There is no disagreement among the parties as to the fact that Causey was not notified that the plaintiff's underlying action was set for trial until three days prior to its commencement. This can hardly be termed "adequate" notice or "diligence" on the part of Gallant/Warrior. Additionally, the trial court found that Causey's failure to appear at trial was due to a lack of funds necessary to travel to the Daley Center. This finding is supported by Causey's testimony, and we will not disturb it as no contrary finding is clearly evident. Failure to attend a trial due to a lack of funds necessary to travel to court cannot be deemed a "refusal to cooperate."

Based on the record before us, we are unable to conclude that the trial court's finding that Gallant/Warrior failed to establish Causey's noncooperation in the defense of the plaintiff's action is against the manifest weight of the evidence. However, since Gallant/Warrior also claims that the trial court relied on information it received outside the record to support its finding, our analysis must continue.

The evidence established that Blumenthal and Lowrey were not merely attorneys engaged by Gallant/Warrior to defend Causey, they were employees of Gallant/Warrior at the time that they undertook Causey's representation. It appears from the record that when the trial court became aware of this circumstance, it ordered that the matter be brought to the attention of the Attorney Registration and

Disciplinary Commission (ARDC). It also appears that a copy of the transcript of the February 26, 1998, proceedings before the trial court, or a portion thereof, was sent to the ARDC at some point in time prior to the issuance of the trial court's written order on May 7, 1998. In its May 7 order, the trial court found that Blumenthal and Lowrey's representation of Causey while they were employees of Gallant/Warrior constituted a conflict of interest. Specifically, the court found that these attorneys violated various provisions of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.1 *et seq.*) by, *inter alia*: failing to advise Causey of his rights and duties; rejecting an arbitration award in favor of the plaintiff without advising Causey that they were doing so; failing to disclose to Causey that they were acting to protect the interests of Gallant/Warrior; and failing to advise the judge presiding over the plaintiff's trial of their conflict of interest.

In its postjudgment motion, Gallant/Warrior alleged that, subsequent to the close of proofs, the ARDC had "exonerated" and "taken no disciplinary action" against Blumenthal or Lowrey. On the strength of this fact, Gallant/Warrior requested that the court vacate its judgment of May 7, 1998, and enter judgment in its favor. When Gallant/Warrior's postjudgment motion came on for hearing, the trial judge informed the parties that, prior to the issuance of his written order on May 7, 1998, he was contacted by a representative of the ARDC who informed him that the ARDC would not consider the matter until the court made its findings and that it was closing its file. On appeal, Gallant/Warrior contends that the trial court's determination that Blumenthal and Lowrey violated the Illinois Rules of Professional Conduct was somehow influenced by the information it received from the ARDC and, as a result, it argues that the judgment of May 7, 1998, should be reversed.

In a bench trial, a judge is presumed to have considered only competent evidence in making his finding. *People v. Tye*, 141 Ill. 2d 1, 26, 565 N.E.2d 931 (1990). This assumption will be overcome only if the record affirmatively demonstrates the contrary, such as the judge's consideration of matters outside the record. *Tye*, 141 Ill. 2d at 26. A court's consideration of matters outside the record is prejudicial error which can result in a reversal of its judgment. *People v. Steidl*, 177 Ill. 2d 239, 266, 685 N.E.2d 1335 (1997). However, we fail to find any evidence in the record before us which suggests that the trial court relied upon anything outside the record in arriving at its judgment.

Our reading of the record reveals that the trial judge acknowledged that a representative of the ARDC called and informed him that the ARDC would not consider the matter at that time and that the ARDC's file was being closed. There is no suggestion that the trial judge and

the ARDC representative discussed the specifics of Blumenthal or Lowrey's conduct or the merits of any charge that they violated the Illinois Rules of Professional Conduct. Nevertheless, Gallant/Warrior asserts that "the Trial Court acknowledged that it accepted a communication from the Attorney Registration and Disciplinary Commission of the Supreme Court and *utilized the same in making its decision.*" (Emphasis added.) In the statement of facts contained in its brief, Gallant/Warrior states that "the Court acknowledged that he got this call at a time prior to rendering the decision and *considered the same.* (Volume 4, T.53)." (Emphasis added.) Although there is no question that the trial judge received the call from the ARDC prior to the issuance of his judgment order, there is nothing contained on the record page referenced by Gallant/Warrior or any other page of the record that even remotely suggests that the trial judge "utilized" or "considered" any information that he received from the ARDC in rendering his judgment.

Gallant/Warrior also seems to argue that the trial court's findings of a conflict of interest and violations of the Illinois Rules of Professional Conduct on the part of Blumenthal and Lowrey are not supported by the evidence in the record. Assuming for the sake of argument that the contention is correct, we would still affirm the trial court's order of May 7, 1998, and the denial of Gallant/Warrior's post-judgment motion.

An erroneous conclusion of law is not a ground for reversal of a judgment where the judgment itself is legally correct. *Ehredt v. Forest Hospital, Inc.*, 142 Ill. App. 3d 1009, 1012, 492 N.E.2d 532 (1986). "In addition, an erroneous finding of a material fact is not ground for reversal where there are other findings not inconsistent therewith which are unaffected by the error and are sufficient to sustain the judgment." *Ehredt*, 142 Ill. App. 3d at 1012; see also *Evanik v. Janus*, 120 Ill. App. 3d 475, 486-87, 458 N.E.2d 962 (1983). In the instant case, the failure on the part of Gallant/Warrior to give Causey more than three days' notice of a trial date that had been set 2½ months prior, along with the trial court's finding that Causey told Blumenthal that he lacked the funds to travel to court, is sufficient, standing alone, to support a finding that Gallant/Warrior failed to establish its defense of noncooperation, without regard to the correctness of the trial court's findings that Blumenthal and Lowrey were in a conflict of interest and violated the Illinois Rules of Professional Conduct. Our decision in this regard makes it unnecessary for us to consider Gallant/Warrior's claim that the trial court erred in quashing its subpoena for Lowrey to testify in support of its postjudgment motion as the purpose of that testimony was only to inform the court that the ARDC had taken no action against him.

For these reasons, we affirm the May 7, 1998, judgment against Gallant/Warrior in the sum of $16,771.91 in favor of Causey for the use and benefit of the plaintiff, and the denial of Gallant/Warrior's postjudgment motion.

Next, we address the propriety of the trial court's order of December 8, 1998, awarding Causey attorney fees and assessing a sanction against Gallant/Warrior pursuant to section 155 of the Illinois Insurance Code. In urging reversal of this order, Gallant/Warrior argues that relief under section 155 can only be sought by a policyholder in a first-party action against his insurer, and not in the context of a garnishment proceeding brought by a third party.

■ Section 155 of the Illinois Insurance Code provides in pertinent part as follows:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (West 1996).

According to our supreme court, this "statute provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 520, 675 N.E.2d 897 (1996).

■ From the outset, we are compelled to observe that Gallant/Warrior's brief does not address itself to the question of whether the raising of a noncooperation defense in this case was "vexatious and unreasonable," nor does it claim that the trial court erred in the calculation of the attorney fees it awarded or abused its discretion in assessing a $3,500 sanction. Rather, Gallant/Warrior's brief states: "Although in no way does Gallant agree with the lower court's finding that Gallant or Warrior had exhibited 'vexatious and unreasonable' misconduct at anytime, Gallant presently takes issue with the lower court's final conclusion in this case that Section 155 should have been looked to for relief in the context of the facts below." Consequently,

Gallant/Warrior has waived all issues as to the propriety of the fees and sanction awarded to Causey under section 155, other than the legal question of whether relief under that statute can be awarded to a policyholder in the context of a garnishment proceeding commenced against his insurer by a third-party judgment creditor. 177 Ill. 2d R. 341(e)(7); see also *People v. Wendt*, 163 Ill. 2d 346, 351, 645 N.E.2d 179 (1994) ("points not raised or argued in an opening appellate brief are waived").

In support of the proposition that a remedy under section 155 may only be awarded in an action commenced by a policyholder against his insurer, Gallant/Warrior relies heavily upon our supreme court's decision in *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 675 N.E.2d 897 (1996). In *Cramer*, the circuit court certified two questions for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). The first question was whether section 155 of the Illinois Insurance Code preempts a common law fraud action against an insurance company for its alleged unreasonable conduct in denying an insurance claim. In the context of formulating its response to this question, the supreme court undertook to examine the development of section 155 and to consider the interaction of the statute with tort law. According to the *Cramer* court, relief under section 155 is extra-contractual in nature and presupposes an action on the policy. *Cramer*, 174 Ill. 2d at 524. As the court observed, before the enactment of the predecessor to section 155, a breach of contract action to receive the proceeds of an insurance policy was a policyholder's only recourse against a carrier that refused to recognize liability under its policy and pay a claim. *Cramer*, 174 Ill. 2d at 521. Section 155 now allows a policyholder to recover reasonable attorney fees, costs, and a penalty, as well as traditional contract damages in an action against an insurer on the policy. *Cramer*, 174 Ill. 2d at 520.

The *Cramer* court also devoted a significant portion of its opinion to a discussion of the differences between claims against insurance carriers for breach of the duty to act in good faith by refusing to settle a claim against an insured ("duty to settle" cases) and claims against insurance carriers for failure to pay the proceeds of their policies ("failure to pay" cases). See *Cramer*, 174 Ill. 2d at 525-27. The *Cramer* court acknowledged that an independent tort action has been recognized in "duty to settle" cases, because, absent policy provisions defining the insurer's liability for failing to respond to settlement offers, the policyholder has no contractual remedy. When an insurer breaches its "duty to settle," it may be liable for the full amount of a judgment against its policyholder, regardless of the limits of its policy. *Cramer*, 174 Ill. 2d at 525-26. When, on the other hand, an insurer re-

fuses to pay pursuant to the terms of its policy, the action is one for breach of contract to which the additional remedies afforded under section 155 are applicable. According to the *Cramer* court, in providing for the extracontractual remedies under section 155, the legislature recognized that the contractual remedy may not be sufficient in a "failure to pay" case. *Cramer*, 174 Ill. 2d at 526-27. However, we are at a loss to understand how the supreme court's discussion of the difference between "duty to settle" cases and "failure to pay" cases along with its holding that section 155 remedies are applicable to the later but not the former supports Gallant/Warrior's contention on appeal.

■ Although section 155 remedies are reserved for policyholders (*Cramer*, 174 Ill. 2d at 520), the statute does not speak in terms of actions brought by policyholders. Its wording is a bit more expansive. By the plain language of section 155, the remedies provided may be awarded in an action, *inter alia*, "against a company wherein there is in issue the liability of a company on a policy." 215 ILCS 5/155(1) (West 1996). For the reasons that follow, we find that the garnishment proceeding instituted by the plaintiff in this case was no less of an action against Gallant/Warrior wherein there was in issue its liability on an insurance policy than a separate breach of contract action brought by Causey against Gallant/Warrior for failure to pay under its policy would have been.

In discussing the remedies available in "failure to pay" cases, the *Cramer* court observed: "Ordinarily, a policyholder may bring a breach of contract action to recover the proceeds due under the policy." *Cramer*, 174 Ill. 2d at 520. The court's use of the word "ordinarily" suggests that, although a breach of contract action brought by the policyholder against his insurer is the usual means of recovery, it is not necessarily the exclusive means.

A garnishment proceeding is a remedial measure designed to reach assets belonging to the judgment debtor and make those assets available for application in payment of the judgment against him. *Zimek v. Illinois National Casualty Co.*, 370 Ill. 572, 574, 19 N.E.2d 620 (1939). It is not a distinct and separate suit, but is an ancillary step in the original action. *Baron v. Villareal*, 100 Ill. App. 2d 366, 373, 241 N.E.2d 227 (1968). In such a proceeding, the judgment creditor stands in the shoes of the judgment debtor (*Dewey ex rel. Smith v. United States Fidelity & Guaranty Insurance Co.*, 32 Ill. App. 3d 313, 316, 336 N.E.2d 518 (1975)) and, consequently, the claim asserted against the garnishee must be one that the judgment debtor could have maintained and enforced in his own name (*Baron*, 100 Ill. App. 2d at 373). The rights of the garnishee are protected as the trial of such a claim must be

conducted as in other civil cases. 735 ILCS 5/12—711(c) (West 1996). The Code of Civil Procedure specifically provides that any judgment entered against a garnishee shall be entered "in favor of the judgment debtor to whom the garnishee is indebted *** for the use of the judgment creditor." 735 ILCS 5/12—711(d) (West 1996). The reason for this requirement is obvious. In a garnishment proceeding, it is the legal interest of the judgment debtor that is being asserted against the garnishee, albeit by the judgment creditor. *Baron*, 100 Ill. App. 2d at 372.

In this case, the legal interest asserted against Gallant/Warrior in the garnishment proceeding instituted by the plaintiff was Causey's action on his policy of liability insurance. The issues presented were the same as those that would have been presented had Causey commenced an independent breach of contract action against Gallant/Warrior, asserting a "failure to pay" claim; namely, Gallant/Warrior's liability on the policy of liability insurance it issued to Causey. Simply put, the garnishment proceeding was the functional equivalent of an action for breach of contract by Causey against Gallant/Warrior.

As stated earlier, section 155 relief can, subject to other requirements, be awarded in an action against an insurance company where the question of its liability on a policy of insurance is in issue. Based upon the foregoing analysis, we hold that the garnishment proceeding instituted by the plaintiff against Gallant/Warrior in this case was such an action.

As our recitation of section 155 reflects, there is an additional requirement that must be met before a court should award relief under the provisions of the statute. Specifically, the actions of the insurance company in denying liability, refusing to pay a covered loss, or delaying the settlement of a claim must be vexatious and unreasonable. 215 ILCS 5/155(1) (West 1996). The question of whether any given behavior is vexatious and unreasonable is a question of fact (*Boyd v. United Farm Mutual Reinsurance Co.*, 231 Ill. App. 3d 992, 999, 596 N.E.2d 1344 (1992)), which, in a bench trial, is subject to a manifest weight standard of review. Additionally, it must be noted that section 155 states that a court "may" award relief. 215 ILCS 5/155(1) (West 1996). The use of the word "may" signals a legislative intent to vest the trial court with discretion in awarding relief. As in other matters committed to the discretion of the trial court, we will not reverse in the absence of an abuse of that discretion. See *Boyd*, 231 Ill. App. 3d at 1000. However, Gallant/Warrior made no argument in its brief that the trial court's implicit finding of vexatious and unreasonable behavior on its part is against the manifest weight of the evidence, nor did it address the question of whether the trial court abused its discre-

tion in awarding relief under section 155. Consequently, as noted earlier, these issues have been waived for purposes of this appeal.

Based upon our resolution of the issues raised by Gallant/Warrior in its brief, we affirm the order of the trial court awarding Causey relief under section 155.

■ Both the plaintiff and Causey have requested that we award them sanctions pursuant to Supreme Court Rule 375 (155 Ill. 2d R. 375). Causey has also requested that we remand this case to the circuit court for an award, under section 155, of the attorney fees he incurred defending this appeal. We deny both requests.

For his part on appeal, Causey addressed only the issue of whether relief under section 155 may be awarded to an insured in a garnishment proceeding instituted against his insurer. On the question of whether the trial court's finding that Gallant/Warrior failed to establish a policy defense was against the manifest weight of the evidence, Causey merely adopted the arguments contained in the plaintiff's brief. Since the issue of whether an insured may recover section 155 relief in a garnishment proceeding instituted against his insurer is one of first impression, we are unable to conclude that Gallant/Warrior's appeal was either frivolous or instituted for any improper purpose, and we, therefore, decline to award sanctions pursuant to Rule 375. For the same reason, we are unable to find that Gallant/Warrior's appeal as to that issue, the only issue addressed by Causey, was vexatious or unreasonable. Consequently, we also decline to remand this case to the circuit court for the award of any additional relief under section 155.

Affirmed.

SOUTH and HALL, JJ., concur.